**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HONEY BUM, LLC, a California limited liability company,<br>*Plaintiff-Appellant,*<br><br>v.<br><br>FASHION NOVA, INC., a California corporation; RICHARD D. SAGHIAN,<br>*Defendants-Appellees.* | No. 22-55150<br><br>D.C. No.<br>2:20-cv-11233-RGK-AS<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted December 6, 2022
Pasadena, California

Filed March 22, 2023

Before: PAUL J. KELLY, JR.,* MILAN D. SMITH, JR.,
and DANIEL P. COLLINS, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

* The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Antitrust

The panel affirmed the district court's summary judgment in favor of Fashion Nova, Inc., et al. in an antitrust action brought by Honey Bum, LLC.

Honey Bum, a rival fast-fashion retailer, alleged that Fashion Nova organized a per se unlawful group boycott by threatening to stop purchasing from certain clothing vendors unless they, in turn, stopped selling to Honey Bum. The district court granted summary judgment on Honey Bum's Sherman Act § 1 group boycott claim, concluding that Honey Bum failed to create a material dispute as to the existence of a horizontal agreement, between the vendors themselves, to boycott Honey Bum. The district court also granted summary judgment on Honey Bum's California business tort claims.

The panel held that Sherman Act § 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. In determining the reasonableness of a restraint, two different kinds of liability standards are considered. Some restraints are unreasonable per se because they always or almost always tend to restrict competition and decrease output. Most restraints, however, are subject to the so-called Rule of Reason, a multi-step, burden-shifting framework. The panel held that a group boycott is an agreement among multiple firms not to deal with another

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

firm (the target). Some group boycotts are per se unlawful, while others are not.

Honey Bum asserted a *Klor's*-style per se group boycott, or "naked" group boycott, under which competitors enter into a horizontal agreement to boycott a firm and the boycott's initiator had no purpose other than disadvantaging the target. Honey Bum alleged that Fashion Nova (the hub) pressured clothing vendors (the spokes) to boycott Honey Bum and then those vendors agreed among themselves to do so. The panel held that a horizontal agreement among the spokes was required to prevail, and the district court correctly concluded that Honey Bum failed to establish a material dispute as to whether the clothing vendors agreed among themselves to boycott Honey Bum.

The panel affirmed the district court's grant of summary judgment on Honey Bum's claim for tortious interference with prospective economic relations because that claim required a showing of independent unlawfulness. Accordingly, summary judgment on the Sherman Act claim necessarily required summary judgment on that claim as well. The panel rejected the theory that California Bus. & Prof. Code § 16600 provided a source of independent unlawfulness.

The panel affirmed the district court's grant of summary judgment on Honey Bum's claim for tortious interference with contract because Honey Bum did not show interference with a preexisting valid contract.

## COUNSEL

Jeffery D. McFarland (argued) and Grant Maxwell, McKool Smith Hennigan PC, Los Angeles, California, for Plaintiff-Appellant.

Jonathan E. Nuechterlein (argued), C. Frederick Beckner III, and Alexandra T. Mushka, Sidley Austin LLP, Washington, D.C.; Chad S. Hummel, David R. Carpenter, and Anna Tutundjian, Sidley Austin LLP, Los Angeles, California; for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

Fashion Nova, Inc., a major retailer in the fast-fashion industry, threatened to stop purchasing from certain clothing vendors unless they, in turn, stopped selling to Honey Bum, LLC—one of Fashion Nova's rival retailers. After over thirty vendors acceded to Fashion Nova's demands, Honey Bum sued Fashion Nova alleging that it had organized a group boycott that is per se unlawful pursuant to the Sherman Act, 15 U.S.C. § 1 *et seq*. Honey Bum also alleged two California business torts. The district court granted summary judgment in Fashion Nova's favor on all of Honey Bum's claims. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Honey Bum and Fashion Nova are retailers in the fast-fashion industry, which quickly produces inexpensive clothing to accommodate consumers' desire for products in

line with ever-changing fashion trends.[1]  Honey Bum is a newcomer to the industry, while Fashion Nova is one of the industry's "biggest player[s]."   Fashion Nova came to believe that Honey Bum had intentionally copied its business model: Honey Bum hired the same website designer, entered into deals with some of the same models and social-media influencers, hired a former Fashion Nova employee, and purchased some of the same styles from the same clothing vendors.  To stop what it perceived to be free-riding, Fashion Nova organized a group boycott of Honey Bum.  It informed vendors that, to retain Fashion Nova's business, they must stop doing business with Honey Bum.  Over thirty vendors agreed to Fashion Nova's terms and stopped doing business with Honey Bum entirely.

Honey Bum filed suit, alleging that Fashion Nova had violated federal antitrust law and committed two California business torts.   Specifically, Honey Bum's original complaint alleged four causes of action: (1) a group boycott in violation of Sherman Act Section 1; (2) monopoly maintenance in violation of Sherman Act Section 2; (3) tortious interference with prospective economic relations; and (4) tortious interference with contract.[2]

Fashion Nova moved to dismiss all alleged causes of action and the district court granted the motion in part, dismissing the Section 2 monopoly-maintenance claim with

---

[1] This factual account construes the record in the light most favorable to Honey Bum.  *See Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021).

[2] Honey Bum also sued Fashion Nova's founder and CEO, Richard Saghian.  Because Honey Bum's claims against Saghian duplicate those against Fashion Nova, we use "Fashion Nova" to refer both to the business and Saghian.

prejudice. The court held that Honey Bum failed to allege a plausible market, concluding that Honey Bum's market of "Los Angeles-sourced fast fashion online clothing" myopically excluded interchangeable products (*e.g.*, New York-sourced fast-fashion clothing).

Fashion Nova later moved for summary judgment on Honey Bum's Sherman Act Section 1 claim and the two California business torts. The court granted summary judgment on all three claims. On the Sherman Act claim, the Court concluded that Honey Bum failed to create a material dispute as to the existence of a *horizontal* agreement (*i.e.*, between the vendors themselves) to boycott Honey Bum. The court then granted summary judgment on Honey Bum's claim for tortious interference with prospective economic relations. That claim requires a showing of independent unlawfulness, so summary judgment on the Sherman Act claim necessarily required summary judgment on that claim as well. The court finally granted summary judgment on Honey Bum's claim for tortious interference with contract, concluding that "a reasonable jury [could not] find that Defendants knew about or intended to disrupt any contractual relationship." Honey Bum timely appealed, arguing that summary judgment should be reversed on each of its claims.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a district court's grant of summary judgment de novo and, viewing the evidence in the light most favorable to the non-movant, determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Soc. Techs*., 4 F.4th at 816 (cleaned up).

## ANALYSIS

### I.  Sherman Act: Per Se Unlawful Group Boycott

Summary judgment was proper on Honey Bum's Sherman Act group-boycott claim.  Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . , or conspiracy, in restraint of trade."  15 U.S.C. § 1.  Despite the seeming "breadth of that provision," we have "long interpreted it 'to outlaw only *unreasonable* restraints.'" *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 688 (9th Cir. 2022) (quoting *Ohio v. Am. Express Co.* ("*Amex*"), 138 S. Ct. 2274, 2283 (2018)).  We determine the reasonableness of a restraint by considering two different kinds of liability standards.

"A small group of restraints are unreasonable *per se* because they 'always or almost always tend to restrict competition and decrease output.'" *Id.* (quoting *Amex*, 138 S. Ct. 2274, 2283 (2018)).  When a per se prohibition applies, we deem the restraint unlawful without any "elaborate study of the industry" in which it occurs.  *Id.* (quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006)).  For example, courts categorically condemn, without inquiring into their effect or purpose, horizontal price-fixing agreements in which competitors at the same level of a supply chain agree to charge the same prices.  *See*, *e.g.*, *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940).

Most restraints, however, are subject to the so-called Rule of Reason.  This multi-step, burden-shifting framework "requires courts to conduct a fact-specific assessment" to determine a particular restraint's "actual effect" on competition.  *Amex*, 138 S. Ct. at 2284 (quoting *Copperweld*

*Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984)). Rule of Reason litigation generally, but not always, requires parties to define a relevant market and assess whether the defendant has market power within that market. *See Amex*, 138 S. Ct. at 2285 & n.7. Though the Rule of Reason is not a "rote checklist," it also generally requires the parties to produce, and the court to evaluate, evidence regarding a restraint's anticompetitive effects, its procompetitive benefits, and whether there are less restrictive means of accomplishing those benefits. *NCAA v. Alston*, 141 S. Ct. 2141, 2160 (2021) (citing *Amex*, 138 S. Ct. at 2284).

A group boycott, as its name suggests, is an agreement among multiple firms not to deal with another firm (the target). Unlike price-fixing, where a plaintiff need only prove it occurred to establish a violation, we employ a multi-track analysis when considering group boycotts. Some group boycotts "are per se unlawful, while others are not." *Flaa*, 55 F.4th at 689; *cf. FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 458 (1986) ("the category of restraints classed as group boycotts is not to be expanded indiscriminately"). While determining "which group boycotts qualify as *per se* violations . . . has been a source of confusion for decades," some general principles have emerged in our precedents. *Flaa*, 55 F.4th at 689 (quotation omitted).

First, a per se prohibition applies where competitors enter into a horizontal agreement to boycott a firm and the boycott's initiator had no purpose other than disadvantaging the target—*i.e.*, "naked" group boycotts. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 877 (9th Cir. 1987) (per se prohibition applies to group boycotts "*designed to stifle competition*" (quoting *Assoc. Press v. United States*, 326 U.S. 1, 19 (1945))); *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416

F.2d 71, 76 (9th Cir. 1969) (per se rule applies to group boycotts that are "naked restraints of trade with no purpose except stifling competition" (quoting *White Motor Co v. United States*, 372 U.S. 253 (1963))); *see also* Herbert Hovenkamp & Phillip E. Areeda, *Antitrust Law* ⁋ 2203 (4th ed. 2022) (per se rule limited to boycotts "that on brief inspection are unlikely to have any purpose other than the reduction of market output and attendant price increases"); Julian von Kalinowski, Peter Sullivan, and Maureen McGuirl, *Antitrust Laws and Trade Regulation* §12.03[2][d] (2d ed. 2022) ("boycotts between competitors are per se illegal when they are nothing more than naked restraints of trade"). For example, the Supreme Court condemned as per se unlawful an agreement among several fashion designers to pressure their retailers into boycotting rival designers to drive them out of the market. *Fashion Originators' Guild of Am. v. FTC*, 312 U.S. 457, 460–63 (1941). Similarly, the Court applied the per se prohibition where a dominant retailer pressured several manufacturers—who, in turn, agreed among themselves—to boycott the retailer's rival. *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212–13 (1959).

Importantly, "[a]ntitrust law does not permit the application" of this *Klor's*-style per se rule "in the absence of a *horizontal agreement*." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 138 (1998) (emphasis added). The horizontal agreement can exist either among the initiators of the boycott (as in *Fashion Originators*) or those pressured into joining (as in *Klor's*). We call this latter type—where one dominant firm pressures other firms at a different level of the supply chain—a hub-and-spoke group boycott. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015). In such a boycott, the initiating firm acts as

a hub to which all the pressured firms, or spokes, are connected. *Id.* Given the horizontal-agreement requirement, plaintiffs can successfully invoke the per se rule in a hub-and-spoke conspiracy only if they prove "horizontal agreements among the spokes." *Id.* at 1192 & n.3. Without an agreement among the spokes, there is simply a "collection of purely vertical agreements" subject to Rule of Reason scrutiny. *Id.*

Second, a modified per se prohibition applies where "some or all," *Flaa*, 55 F.4th at 689, of the following characteristics are met: (1) the defendant's restriction "cut[s] off access to a supply, facility, or market necessary to enable the boycotted firm to compete"; (2) the defendant "possesse[s] a dominant position in the relevant market"; and (3) the defendant's restriction is "not justified by plausible arguments that [it is] intended to enhance overall efficiency and make markets more competitive." *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985). *Northwest Wholesale* involved a joint buying venture's expulsion of a member after a rule violation. *Id.* at 285–86. And its modified per se prohibition lends itself most readily to boycotts facilitated by a joint venture, trade association, or other professional organization. *See PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 835–37 (9th Cir. 2022).

Third, where a group boycott falls neither within the *Klor's*-style per se prohibition nor the *Northwest Wholesale* modified per se prohibition, we apply the Rule of Reason. *Flaa*, 55 F.4th at 693–95; *Hahn v. Oregon Physicians' Serv.*, 868 F.2d 1022, 1031 (9th Cir. 1988). These theories are not always exclusive and a plaintiff can assert more than one of them. *See Flaa*, 55 F.4th at 680–91, 693–95 (applying both *Northwest Wholesale* analysis and the Rule of Reason).

Turning to the facts of this case, Honey Bum asserts only a *Klor's*-style per se group boycott: that Fashion Nova (the hub) pressured clothing vendors (the spokes) to boycott Honey Bum and then those vendors agreed among themselves to do so. Indeed, Honey Bum structured its litigation such that it lacks the kind of evidence required to prevail pursuant to *Northwest Wholesale* or the Rule of Reason.[3] Honey Bum did not attempt to define a relevant market in which Fashion Nova possesses market power; nor did it do any "analysis of [the] impact" of the group boycott on consumers. Accordingly, Honey Bum's Sherman Act claim rises and falls with its ability to show that Fashion Nova organized a per se unlawful hub-and-spoke group boycott.

Below, the district court granted summary judgment because no reasonable jury could find that the spokes in the alleged conspiracy (the clothing vendors) had agreed among themselves to boycott Honey Bum. On appeal, Honey Bum makes two arguments: (1) that an agreement among the spokes is not required to prevail; and (2) even if it is, the district court misconstrued the factual record. We are not persuaded by either argument.

### A. Necessity of a Horizontal Agreement

The district court correctly held that Honey Bum, to survive summary judgment on its hub-and-spoke group-boycott claim, must create a material dispute regarding an agreement among the spokes. As explained, that

---

[3] Though our caselaw refers to *Northwest Wholesale* as a modified per se rule, its threshold inquiries into market power and the harms and benefits of a restriction require "that the facts be developed as in a rule of reason case, or at least almost as fully." *Hahn*, 868 F.2d at 1030 n.9.

requirement flows directly from Supreme Court and our precedents. *NYNEX*, 525 U.S. at 138 ("[a]ntitrust law does not permit the application" of the *Klor's*-style per se rule "in the absence of a horizontal agreement"); *Musical Instruments*, 798 F.3d at 1192 (plaintiff must establish "horizontal agreements among the spokes.").**[4]**

## B. Honey Bum's Proof Failure

Moreover, the district court correctly held that Honey Bum failed to prove such a material dispute. A plaintiff can establish a conspiracy through direct evidence, circumstantial evidence, or both. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999). Direct evidence is smoking-gun evidence that "establishes, without requiring any inferences" the existence of a conspiracy. *Id.* When it comes to circumstantial evidence, "parallel conduct—even consciously parallel conduct—[is] insufficient" to establish a conspiracy. *Musical Instruments*, 798 F.3d at 1193. In addition to parallel conduct, a plaintiff relying on circumstantial evidence must show "plus factors," *id.*, that "tend[] to exclude the possibility that the alleged conspirators acted independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)

---

[4] Against this binding precedent, Honey Bum offers the general proposition that courts are to consider a "conspiracy as a whole." The cases it quotes for this purported unitary-conspiracy rule are readily distinguishable. One quote comes from a turn-of-the-century case addressing how to determine whether a conspiracy affects interstate commerce and thus falls within the scope of the Sherman Act. *See United States v. Patten*, 226 U.S. 525, 544 (1913). The other is from a case involving a sports league—a unique antitrust context where "both types of agreements [vertical and horizontal] are analyzed under the rule of reason." *In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152 (9th Cir. 2019).

(cleaned up). Here, Honey Bum asserts that it produced both direct and indirect evidence, but upon examination, each showing falls short.

### 1. Direct Evidence

Honey Bum relies on three batches of purported direct evidence. None of Honey Bum's evidence "establishes, without requiring any inferences" the existence of a conspiracy because it suggests nothing more than conscious parallelism. *Citric Acid Litig.*, 191 F.3d at 1093.

First, Honey Bum points to evidence relating to the vendors Rehab and Honey Punch, noting that an employee who worked at Rehab, which participated in the boycott of Honey Bum, switched jobs and started working for Honey Punch, which subsequently joined the boycott. This evidence does not, "without requiring any inferences," establish that Rehab and Honey Punch joined the boycott only after agreeing with each other to do so. Instead, it simply shows employee movement from one vendor to another.

Second, Honey Bum emphasizes a communication from another vendor showing that vendor "understood that the boycott in which [it was] participating was not comprised of [sic] a simple vertical arrangement." By Honey Bum's own framing, this communication establishes only "conscious parallelism"—that the vendor "understood" Fashion Nova imposed the same vertical restraints on other vendors.

Third, Honey Bum relies on an entry in Fashion Nova's "vendors to block" spreadsheet, which lists the same contact person for two different vendors. Again, this evidence does not, "without requiring any inferences," establish a conspiracy. Undisputed evidence shows that the listed

contact person worked sequentially for the two listed vendors, and so, like the first batch, this evidence is consistent with employee movement within an industry.

### 2. Circumstantial Evidence

Turning to circumstantial evidence, Honey Bum failed to present plus-factor evidence from which a jury could reasonably infer a horizontal agreement among the spokes (*i.e.*, the clothing vendors Fashion Nova pressured).

#### a. Acts Against Self-Interest

Where the conduct of an alleged co-conspirator is in its own economic self-interest *only if* the other alleged co-conspirators follow suit, there is strong circumstantial evidence of a conspiracy. *See Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1092 (9th Cir. 2015); *Citric Acid*, 191 F.3d at 1095. Here by contrast, acceding to Fashion Nova's demands was in the economic self-interest of each vendor *regardless* of what other vendors chose to do. Fashion Nova is a well-established, high-volume purchaser whereas Honey Bum is an upstart, low-volume purchaser. If a vendor believed Fashion Nova's threats, it would rationally choose to retain Fashion Nova's business. Honey Bum survived a motion to dismiss on a narrow theory that the economic benefit of accepting Fashion Nova's demands depended on other vendors doing so. After discovery failed to bear out that theory, Honey Bum abandoned it and failed to advance any other argument that an individual vendor acted against its self-interest by accepting Fashion Nova's terms.

#### b. Opportunities to Collude

Atypical communications between alleged coconspirators can constitute a plus factor because such communications

HONEY BUM, LLC v. FASHION NOVA, INC.          15

provide the opportunity for parties to come to (and enforce) an illicit agreement. But to qualify as a plus factor, such communications must go beyond the "standard fare" of business and trade-association practice. *Citric Acid*, 191 F.3d at 1098. Here, Honey Bum makes only the generalized, commonplace contention that some fast-fashion vendors are "close colleagues" and "friends" who often attend the same trade shows. If that showing were enough to preclude summary judgment, then "we would have to allow an inference of conspiracy whenever a trade association" exists in a given industry. *Id*. Such a result would run counter to the Supreme Court's instruction that "trade associations often serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promoting demand for products and services." *Id.* (citing *Maple Flooring Mfs. Ass'n v. United States*, 268 U.S. 563, 567 (1925)).

## II. Tortious Interference with Prospective Economic Relations

Summary judgment was also proper concerning Honey Bum's claim for tortious interference with prospective economic relations (TIPER). This California business tort requires a plaintiff to establish: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 689 (9th Cir. 1990) (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987)). The plaintiff must also show that

the defendant's conduct was independently wrongful—*i.e.*, that it is "wrongful by some legal measure other than the fact of interference itself." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1142 (2020); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) (the interference must be unlawful pursuant to "some constitutional, statutory, regulatory, [or] common law" prohibition).

Here, the parties dispute only whether this latter independent-wrongfulness requirement is satisfied. Honey Bum primarily asserted Section 1 of the Sherman Act as a source of independent unlawfulness. Because we hold that Honey Bum's Section 1 claim fails, that statutory provision cannot provide a source of independent unlawfulness for Honey Bum's TIPER claim.

Honey Bum alternatively asserted—for the first time in its opposition to summary judgment—that California Business and Professions Code § 16600 provides a source of independent unlawfulness. That section provides that "every contract by which anyone is restrained from engaging in a lawful profession . . . is to that extent void." Even assuming this theory was properly raised before the district court, it fails. Though the language is unconditional on its face, the California Supreme Court has interpreted it to impose a per se prohibition only in the context of certain employer-employee noncompete clauses; outside of that context, the court has "long applied a reasonableness standard to contractual restraints on business operations and commercial dealings" that resembles the Rule of Reason. *Ixchel*, 9 Cal. 5th at 1159. Honey Bum structured its litigation specifically to avoid the Sherman Act's Rule of Reason. As a result, the summary-judgment record is devoid of any evidence upon

which a reasonable factfinder could conclude that Fashion Nova's conduct violates California's analogous standard.

## III. Tortious Interference with Contract

Finally, summary judgment was proper concerning Honey Bum's claim for tortious interference with contract (TIC). This California business tort is closely related to the one addressed in the previous section—applying, as its name suggests, to business relationships that have already culminated in a contract. *Ixchel*, 9 Cal. 5th at 1141. As such, it requires a plaintiff to establish: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)). In addition to the formality of the disrupted relationship (contractually cemented versus only prospective), there is another critical distinction between TIC and TIPER: the former tort generally does *not* require a showing of independent wrongfulness. *Ixchel*, 9 Cal. 5th at 1148.

Because Fashion Nova allegedly interfered with contracts for the sale of goods (*i.e.*, clothing items), we determine whether a valid contract existed pursuant to California's Uniform Commercial Code – Sales (UCC). *See* Cal. Com. Code §§ 2101, 2102, 2105(1). Formation of a contract requires "an *offer* communicated to the offeree and an *acceptance* communicated to the offeror." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001) (emphasis added). The UCC considers a purchase order to be an offer to buy

goods. *See* Cal. Com. Code § 2206(1)(b) (referring to "[a]n order or other offer to buy goods"); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 538 (9th Cir. 1983) ("The weight of authority is that purchase orders . . . are not enforceable contracts until they are accepted by the seller."). The merchant who receives a purchase order can, as a default rule, accept the offer either through prompt shipment or "by any medium reasonable in the circumstances." Cal. Com. Code § 2206(1)(a)–(b); *see also* Restatement (Second) Contracts § 35(1) ("An offer gives the offeree a continuing power to complete the manifestation of mutual assent by acceptance of the offer.").

Below, the district court entered summary judgment on Honey Bum's TIC claim after concluding that "a reasonable jury [could not] find that Defendants knew about or intended to disrupt any contractual relationship." On appeal, Honey Bum argues that two purported contracts warrant reversal. We are not persuaded.

First, Honey Bum relies on an email exchange to assert a contract with the vendor Bear Dance. In the cited exchange, Honey Bum informed Bear Dance, "We place[d] an order today with two styles, can you tell me if this will be fulfilled or cancelled?" To which Bear Dance responded: "We will go ahead and cancel it from our side." As explained, a purchase order is simply an offer. Cal. Com. Code § 2206(1)(b); *Foremost Pro*, 703 F.2d at 538. Though inartful, Bear Dance's email "cancel[ing]" the purchase order was a rejection of Honey Bum's offer to purchase its goods. Therefore, there was no valid contract between Bear

Dance and Honey Bum with which Fashion Nova could have intentionally interfered.[5]

Second, Honey Bum points to a purported contract with Viva USA. Even assuming that there was a valid contract between Viva USA and Honey Bum, the existence of a contract is just one element of a TIC claim. As relevant here, Honey Bum also needed to create a material dispute that Fashion Nova took "intentional acts designed to induce a breach or disruption of the contractual relationship." *United Nat. Maint.*, 766 F.3d at 1006. But Honey Bum cited no evidence—either in its opposition to summary judgment or in its briefs before this court—that creates a material dispute regarding this requirement. Honey Bum cites an email exchange in which a vendor noted that Honey Bum "pre-ordered" some goods and a Fashion Nova employee requested that someone "call and ask" the vendor to not "ship." To begin, this email exchange does not relate to either of the two purported contracts Honey Bum put forward. In any event, all this exchange shows is that Fashion Nova intentionally acted to prevent a vendor from entering into a *prospective* contract by shipping the requested goods, *see* Cal Commercial Code § 2206(1)(b), not that Fashion Nova intentionally induced the vendor to breach an existing contract. Honey Bum next points to testimony from Bear Dance that Fashion Nova "asked us to stop taking Honey Bum's orders." Again, this evidence does

---

[5] Both in its briefing and at oral argument, Honey Bum mentioned in passing "a number of purchase orders" that could purportedly support a TIC claim. Even assuming Honey Bum did not waive an argument based on these purchase orders by failing to mention them in its summary-judgment opposition, the argument fails for the same reason as the Bear Dance email exchange. A purchase order, without more, is not a contract.

not relate to the asserted Viva USA contract and merely shows interference with *prospective* economic relations—not, as this tort requires, interreference with a preexisting valid contract.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment on all of Honey Bum's claims is **AFFIRMED**.